T. H. NEEL et al., Petitioners,

v.

W. L. FULLER, Respondent.

No. B–6016.

Supreme Court of Texas.

July 20, 1977.

Rehearing Denied Oct. 5, 1977.

L. Holt Magee, Monahans, Bullock, Scott & Neisig, Russell W. Neisig and Maurice R. Bullock, Midland, for petitioners.

Turpin, Smith & Dyer, Irby L. Dyer, Midland, for respondent.

ON MOTION FOR REHEARING

REAVLEY, Justice.

We grant the motion for rehearing filed by W. L. Fuller, set aside our former judgment, withdraw our opinion of December

22, 1976, reverse the judgment of the Court of Civil Appeals, and modify and affirm the judgment of the trial court with the following opinion.

This suit concerns the effect of a sale by the owners of a royalty interest at the time that interest was in custodia legis because of a pending receivership. The receivers instituted this suit seeking a declaratory judgment to have the royalty deed declared of no force or effect insofar as it limited or interfered with the powers of the receivers, acting under control of the court. The trial court granted the receivers' motion for summary judgment, declaring that the title to the property was not affected in any manner by the royalty deed and nullifying all claim of the grantee thereunder. The Court of Civil Appeals reversed and rendered a take-nothing judgment against the receivers. 535 S.W.2d 719. We reverse the judgment of the Court of Civil Appeals and, with modification, affirm the trial court judgment for the receivers.

Charles E. Nichols who died in 1931, and Nellie D. Nichols who died in 1945, were the owners of 32 tracts of land in Ward County. The executors of their estates and the Nichols heirs and devisees were parties to a suit filed in the District Court of Ward County which sought construction of the wills, determination of ownership, conservation and partition of the estate. Following a trial in this Cause No. 6084 the court placed the property in receivership, and the court appointed O. P. Jenson as receiver with powers to sell or rent the land and to divide the proceeds among 20 named persons according to the respective interests of each as stated in the court's order.

In 1948 these same Nichols heirs and devisees, acting individually and without any participation of the court, executed a trust agreement which purported to convey title in all of this same real property to O. P. Jenson as trustee with full powers of sale and with the direction that the trustee should divide and distribute the assets to the grantors. The instrument further provided that upon the death of O. P. Jenson the same title and powers should devolve upon T. H. Neel as substitute trustee. Thereafter O. P. Jenson did make numerous sales of these lands, but the present record indicates that he made very few reports to the court on his activities. In May of 1954 he made a report which covered the transactions of the receivership from January 1, 1947 to the date of the report and showed the disposal of the bulk of the real property. O. P. Jenson died in 1957. The Jenson family turned over the Nichols property records to T. H. Neel, who then began to act as successor trustee pursuant to the trust agreement.

In 1966 Neel reported to the court in the receivership cause that he had acted as successor trustee and had made sales of the property but that doubt had risen about his authority to do so. He alleged that the receivership should be closed, and he requested that he might be appointed receiver with authority to proceed with final disposition. In 1969 Henry B. Allen, Jr. also applied to the court to be appointed receiver to meet the need to close the receivership. The court appointed Neel and Allen co-receivers to take possession of the property, to prepare an inventory for the court, and "upon proper application to this Court and after notice to all parties and hearing thereon and confirmation by the Court, . . . [to] . . . adopt, correct, confirm or re-confirm any transactions of O. P. Jenson as Receiver or Trustee as may properly come before the Court, or any transaction of T. H. Neel as Trustee . . . ." The co-receivers proceeded to make an inventory of all of the assets and a list of the current owners of the property. In listing the current ownership they set forth numerous conveyances of interests in the estate by and under the original owners. They then reported to the court that the receivership was ready for closing except for a dispute over title to one of the tracts, which seems to have been the royalty interest claimed by W. L. Fuller.

In 1958 T. H. Neel and W. L. Fuller had agreed on the sale of a royalty interest in three tracts of land held in the receivership. Neel prepared the deed which recited the

receivership and the trust agreement and then purported to convey the royalty interest from T. H. Neel as "receiver and trustee" to W. L. Fuller. There has been no confirmation by the court of this royalty conveyance.

The present litigation was instituted by Neel and Allen as receivers seeking a "declaratory judgment to adjudicate and declare of no force or effect . . . [the 1958 royalty deed to Fuller] . . . insofar as said instrument purports to limit or interfere with the exclusive rights of Plaintiffs, acting under control of the Court, to the possession, control and sale of the oil, gas and mineral interests purportedly conveyed thereby and to distribute the proceeds of a sale of the said oil, gas and mineral interests, as the Court may direct in the said Cause No. 6084." The receivers alleged that Fuller claimed that, notwithstanding the existence of the receivership, the royalty deed conveyed all of the right, title and interest in the property described and that Fuller denied that the receivers could legally convey the royalty interest thereafter. The receivers further alleged that oil royalty had been paid to Fuller and that they should have judgment recovering same.

Fuller answered that he had intervened in the receivership proceeding and become a party to Cause No. 6084, which rendered moot any issue sought to be raised in the present lawsuit and left no question of law or a fact to be decided. Fuller did not pay into the receivership the amount of money he had received as royalty on the oil produced from this land. In subsequent briefs he has indicated a willingness to do this, but it is apparent that it will not be done unless he is required to do so by the judgment of the court.

The motion for summary judgment filed by the receivers described the relief sought in the same terms as their pleadings. The motion contended that its supporting affidavits showed that, except as to the amount of royalty, no issue of fact existed and that the plaintiffs were entitled to judgment:

[D]eclaring said Mineral Deed to be of no force and effect, insofar as it purports to limit or interfere with the exclusive rights of Plaintiffs, acting under control of the Court, to the possession, control and sale of the oil, gas and mineral interests purportedly conveyed thereby and to distribute the proceeds purportedly conveyed thereby and to distribute the proceeds of a sale as the Court may direct, and further declaring that the cloud cast upon the title of Plaintiffs by said Mineral Deed be removed.

The trial court rendered summary judgment which, in addition to ordering the recovery of the agreed amount of royalty payments received by Fuller, decreed that the royalty deed was illegal and void and of no force or effect, that the title of the property was not in any manner affected by the purported deed, and that all adverse claim of Fuller was removed.

It is apparently significant to the parties that the trial court did not restrict its declaration of the voidness of the royalty deed to Fuller to accord with the relief sought by the receivers in their pleadings and in their motion for summary judgment—i. e., by the language quoted above. The arguments at this stage seem to bear more upon the question of the effect of this royalty deed upon the interests of the Nichols devisees or heirs and their successors—rather than the legal power and control of the receivers pursuant to the direction and confirmation of the receivership court. We will give some attention to the former issue, but it is not properly the subject matter of this lawsuit since the owners of the Nichols estate are not parties here and the receivers sought the declaration of the invalidity of the royalty deed only to an extent which everyone seems to agree upon.

■ The judgment of the trial court is not incorrect, but the parties apparently regard it as deciding the relative position of Fuller and the parties to the receivership as to the royalty interest or whatever the court distributes in its stead. While the Court of Civil Appeals held that the royalty interest conveyed in 1958 to Fuller was

subject to the pending receivership, that court then denied all relief to the receivers in the present suit. The receivers were entitled to the relief they sought. During the pendency of the receivership the property was held in custodia legis free from interference with the exclusive custody and possession which the court had assumed over it. *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339 (Tex.1976); *Ellis v. Vernon Ice Co. & Water Co.*, 86 Tex. 109, 23 S.W. 858 (1893); *Russell v. Texas & P. Ry. Co.*, 68 Tex. 646, 5 S.W. 686 (1887); see *Ex parte Britton*, 127 Tex. 85, 92 S.W.2d 224 (1936).

Without confirmation by the court, the legal title to this royalty interest could not pass to Fuller, and he is not entitled to receive royalty payments from the production of the minerals. The purchase price paid by Fuller to Neel in 1958 was subsequently distributed to the parties in the receivership proceeding with the approval of the court, but that cannot be considered as a confirmation of the sale to Fuller. The details of the transaction were not presented to the court, and no express confirmation of those details and the conveyance was ever made.

■ It may be said that the conveyance to Fuller was a pendente lite transfer, but that cannot resolve the issues between these parties. Different pendente lite transfers have different effects. If two litigants claim the ownership to a tract of land in a lawsuit, and if lis pendens has been filed, either of the litigants may freely convey to third parties, because the court has no interest in the matter except to resolve the question of ownership. If the grantor in a deed to a third party ultimately loses the lawsuit, the grantee enjoys nothing more than whatever claim of damages he may have against his grantor. It would be incorrect to say that the deed was void. *Rosborough v. Cook*, 108 Tex. 364, 194 S.W. 131 (1917); *Smith v. Olsen*, 92 Tex. 181, 46 S.W. 631 (1898); *Wortham v. Boyd*, 66 Tex. 401, 1 S.W. 109 (1886). When property is placed in receivership, however, the court is concerned with more than the ownership of that property on the date of the commencement of the litigation. The court ordinarily assumes responsibility for the conservation and management of the property. Any conveyance without approval of the court has no effect upon the receivership and the accomplishment of those purposes.

■ Because of the 1958 royalty deed, payments from production have been made directly to Fuller in the amount of $3,547.11; and we are told that an additional sum has accrued since the payments were suspended as the result of this litigation. Under the holding of the Court of Civil Appeals this money would pass out of the receivership unscrutinized by the court. This is the type of interference that the doctrine of custodia legis was intended to prevent.

It does not necessarily follow that Fuller has obtained no rights against the grantors in the 1948 trust deed and those under whom they claim. To the extent that his claim does not interfere with the accomplishment of the purposes of the receivership or unduly complicate that proceeding, he should be entitled to step into the shoes of those who conveyed that right to him. See, *Lauraine v. Masterson*, 193 S.W. 708 (Tex.Civ.App.1917, writ ref'd); 2 Clark on Receivers (3rd ed. 1959) Sec. 488; 49 Tex. Jur.2d Receivers, Sec. 11.

Fuller alleged in his answer that he is a party to the receivership proceeding. The receivership court will take into consideration the rights of the parties, the avoidance of unnecessary further litigation, and justice to all. If the purposes of the receivership have been fully accomplished, and if its termination and the distribution of assets is all that remains to be done, that court may order the distribution of this particular royalty interest to Fuller. It will, of course, apply the money received from the royalty payments to meet first a proper share of the costs of the receivership and of this litigation.

Accordingly, the judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is affirmed with the fol-

lowing modification: The royalty deed dated December 5, 1958, executed by T. H. Neel as grantor to W. L. Fuller and recorded in Volume 209 at page 282 of the Ward County Deed Records, is declared to have no force and effect insofar as said instrument purports to limit or interfere with the exclusive rights of plaintiffs, acting under control of the court, to the possession, control and sale of the oil, gas and mineral interests purportedly conveyed by said deed, and the court in Cause No. 6084 is entitled to distribute the royalty or proceeds of a sale of the royalty interest in accordance with this opinion. No determination is made hereby as to the individual rights of the parties to the receivership, Cause No. 6084.